UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR SUMPTER,

                Plaintiff,

                                          Case No. 12-cv-13958
                                          Honorable Paul D. Borman
v.                                       Magistrate Judge David R. Grand

MARILYN E. ATKINS, Judge, in her
individual and official capacity,
ABED HAMMOUD, in his individual
and official capacity,
ALLEN COX, IV, in his individual and
official capacity,

                Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT [23]

**I.    RECOMMENDATION**

Before the Court is Defendants Allen Cox and Abed Hammoud's Motion to Dismiss and for Summary Judgment [23] ("Motion"), which has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 626(b)(1)(B). Upon consideration of the Motion and Plaintiff Omar Sumpter's opposition thereto [26], the Court, for the reasons set forth below, RECOMMENDS GRANTING the Motion.

**II.    REPORT**

    **A.  Factual Background**

This Court set forth the basic facts of this case in its January 16, 2013 Report and Recommendation to grant Defendant Marilyn Atkins' motion to dismiss. [20]. The Court incorporates the Background section of that R&R here by reference, and adds the following details germane to the instant Motion.

Defendant Cox is the Wayne County Deputy Sherriff who investigated Sumpter's alleged conduct with respect to a fraudulent real estate transaction, and Defendant Hammoud is the Wayne County Assistant Prosecuting Attorney who both assisted in the investigation and prosecuted Sumpter criminally for that conduct. (Compl. ¶¶ 7-8, 36, 42). The victim of the alleged scheme was a woman named Shirley Snyder. (Compl. Ex. B). Sumpter attached to his complaint a copy of the September 6, 2007 transcript from Ms. Snyder's investigative subpoena testimony taken pursuant to MCL 767A.2(1). (*Id.*). Defendant Hammoud questioned Ms. Snyder (Defendant Cox was present, as well), advising her that she was being questioned under oath, that she was swearing that any testimony she gave was truthful, and that she was subject to penalty of perjury for any knowingly false testimony she gave. (*Id.* at 22, 25, 37-38). Ms. Snyder's testimony clearly implicated Sumpter (and others) in a scheme which led to the "sale" of her home without her consent and without her receiving any of its proceeds. (*Id.* at 27-34).[1]

On September 20, 2007, two weeks after the investigative subpoena deposition was taken, state district court judge Marilyn Atkins signed a criminal felony complaint charging Sumpter with various offenses in connection an alleged conspiracy to commit deed fraud.

---

[1] Ms. Snyder testified that she was attempting to sell her home in the summer of 2007. (Compl. Ex. B at 26). She hired a real estate agent, and at some point thereafter, the agent brought Sumpter to her as a potential buyer. (*Id.* at 27-28). Sumpter, without inspecting Snyder's home, indicated that he wished to buy it. The parties "filled papers out" indicating that Sumpter was agreeing to buy the home for $65,000. (*Id.* at 28-29). The agent, Sumpter, and Sumpter's brother, Nelson Sumpter ("Nelson"), later returned to Snyder's home. (*Id.* at 29). At that time, Nelson "was doing all the talking," and produced some sort of laptop computer and electronic device that he used to scan or copy Snyder's driver's license. (*Id.* at 29-31). Nelson then signed an Offer to Purchase document agreeing to buy the home for $65,000. (*Id.* at 31-32). Snyder never saw Nelson again. However, at some point thereafter, Nelson "sold" Snyder's home to a third party using a Power of Attorney document which bore a fraudulent signature in Snyder's name. (*Id.* at 32-34). Snyder did not receive any funds from the sale of her home. (*Id.* at 34).

2

(Compl. ¶¶ 17 & 19, Ex. A).[2]  At the bottom of the criminal complaint, it states: "Warrant authorized on 9/20/07 by Abed Hammoud," the prosecuting attorney, and it is signed by Mr. Hammoud.  (Compl. ¶ 7, Ex. A).  The criminal complaint's first page identifies Deputy Allen A. Cox of the Wayne County Sheriff's Department as the "complaining witness," although at the bottom of the criminal complaint, the line for "Complaining witness signature" is blank. (Compl. ¶ 8, Ex. A).  Nevertheless, Judge Atkins signed the criminal complaint, affirming that it was "[s]ubscribed and sworn before" her on September 20, 2007. (Compl. ¶ 61, Ex. A).  As a result, Judge Atkins also issued a warrant for Sumpter's arrest.  (Compl. ¶¶ 29 & 35).

A preliminary examination on the charges against Sumpter was held on December 3, 2007, before 36th District Court Judge Donald Coleman.  (Doc. #1 at 42-52).  The transcript's Table of Contents indicates that Ms. Snyder testified and was examined by both Defendant Hammoud and Sumpter's counsel.  (*Id.* at 43).  Relevant to the issues before the Court are the following findings made by Judge Coleman after counsel concluded their arguments:

> All right.  The Court has listened to the testimony offered in this matter…I've reviewed or listened to the arguments.  I'd like to see the documents for just a moment, the ones that have been admitted in this matter…Mr. Nelson Sumpter completed whatever deal and transaction that ultimately occurred between himself and [Ms. Snyder].  Moreover, the evidence is clear that Mr. Omar Sumpter had contact with Ms. Snyder in an attempt to proceed with an initial deal.  That deal did not go through.  His brother comes into the picture and the deal is commenced …the testimony establishes that Mr. Omar Sumpter played some part in obtaining a document from [] Ms. Snyder, a divorce document, and that is believed by the prosecution … that that item together with Mr. Omar Sumpter making initial contact with [Ms. Snyder] together with some payments that were subsequently made are enough to establish that he aided and abetted in this particular transaction.

(*Id.* at 49-50).  Accordingly, Judge Coleman bound Sumpter over on the charges.  (*Id.* at 51-52).

---

[2] Charges brought against Sumpter included not only the "Conspiracy" to defraud charge, but also charges for "False Pretenses," "Identity Theft," and "Money Laundering."  (Compl. Ex. 1).

3

Two months later, on February 27, 2008, Nelson's preliminary examination was held, also before Judge Coleman. At the conclusion of that hearing, Judge Coleman found that the prosecutor presented sufficient evidence to bind Nelson over on all charges he was facing, other than the conspiracy charge. (*Id.* at 56-61). Defendant Hammoud then inquired of Judge Coleman whether, in light of his ruling as to the conspiracy charge against Nelson, the same ruling would apply with respect to the conspiracy charge against Sumpter. (*Id.* at 59). Judge Coleman answered in the affirmative. (*Id.* at 59-60).

Nevertheless Sumpter's case apparently proceeded to a jury trial on all charges, including the conspiracy charge, and he was convicted. (Compl. ¶ 20); *see People v. Sumpter*, 2010 WL 3718899 at *1 (Mich. App. Sept. 23, 2010) (noting that Sumpter was tried and convicted by a jury on multiple charges including "conspiracy to commit false pretenses or second degree money laundering…"). Sumpter was incarcerated from December 3, 2008, through December 3, 2009, served a one-year term of parole, and is no longer in state custody. (Compl. ¶¶ 3, 13, 20-21). Sumpter appealed his conviction to the Michigan Court of Appeals, which appeal was denied on September 23, 2010, after he had been released from custody, but while he was still on parole. *See Sumpter*, 2010 WL 3718899. He then filed an application for leave to appeal with the Michigan Supreme Court, which was denied on March 8, 2011, after he his term of parole had concluded. *People v. Sumpter*, 488 Mich. 1050 (2011).

On September 7, 2012, Sumpter filed the instant action *pro se* under 42 U.S.C. § 1983, alleging malicious prosecution and conspiracy to prosecute in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. (Compl. ¶ 9). Named as Defendants were Cox, Hammoud and Judge Marilyn Atkins, though his claims against Judge Atkins have been

4

dismissed on grounds of judicial immunity. [20, 29, 31]. Sumpter seeks at least $2,250,000 in compensatory damages and $4,500,000 in punitive damages. (Compl. Prayer for Relief).

Defendants Cox and Hammoud move to dismiss under Fed. R. Civ. P. 12(b)(6), asserting that Sumpter's claims are barred by the *Heck v. Humphrey* favorable-termination requirement, absolute immunity, and qualified immunity.[3] Sumpter filed an opposition to the motion [26], and the matter is now ready for disposition.

**B. Legal Standards**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555-56). While a *pro se* plaintiff's complaint is to be

---

[3] To the extent Defendants move to dismiss this case, the Court takes as true all well-pleaded factual allegations in Sumpter's complaint [1] and construes all reasonable inferences from those allegations in his favor. *Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011). Complaints of *pro se* litigants are construed more liberally than those drafted by attorneys. *West v. Adecco Emp't Agency*, 124 F. App'x 991, 992 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, unless noted otherwise, the following facts are taken from the Sumpter's complaint and the exhibits attached thereto. *See Commercial Money Ctr., Inc. V. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to pleadings become part of the pleadings and may be considered on a motion to dismiss.") (citing Fed. R. Civ. P. 10(c)). To the extent a factual assertion in the complaint is inconsistent with one of the exhibits attached in support, this Court accepts the facts as stated in the exhibit. *See Williams v. CitiMortgage, Inc.*, 498 F. App'x. 532, 536 (6th Cir. 2012).

construed liberally, "it must still plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. March 30, 2011).

The court must accept the factual allegations of the complaint as true when determining whether the plaintiff has set forth a "plausible claim." *Bredesen*, 500 F.3d at 527; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard*, Ohio, 346 F. App'x 49, 51 (6th Cir. 2009). Nor is the court required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### 1. Sumpter's Action is Not Barred under Heck's Favorable-Termination Requirement

Defendants first contend that Sumpter's § 1983 suit is barred by the favorable-termination requirement annunciated in *Heck v. Humphrey*, 512 U.S. 477, 486-87. As Defendants emphasize in their brief, the general rule in Section 1983 jurisprudence is that to bring a cause of action for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal [or by other state order], or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck* at 486-87. Claims challenging something other than the conviction and sentence are also barred absent a favorable determination if a favorable ruling for the plaintiff would "necessarily imply the invalidity of his conviction or sentence." *Id.* at 487.

6

Justice Souter's concurring opinions in *Heck*, *id.* at 500, and *Spencer v. Kemna*, 523 U.S. 1, 21 (1998), however, called for limiting the Court's opinion in *Heck* to situations in which federal review of the incarceration was actually available to the convicted person.  Four other justices, a majority of the Court, also articulated this view in *Spencer*.  *See id.* at 18, 25, n. 8. Although there has been significant disagreement between the circuits, the Sixth Circuit adopted Justice Souter's stance in *Powers v. Hamilton Cnty. Pub. Defender Com'n*, 501 F.3d 592 (6th Cir. 2007).  In *Powers*, the plaintiff was imprisoned for thirty days for a probation violation.  *Id.* at 597.  He brought a class-action § 1983 claim against several defendants on the theory that his incarceration violated his Fifth, Sixth, and Fourteenth Amendment rights. *Id.*  The district court dismissed the claims against several defendants but declined to grant summary judgment as to the Public Defender Commission, rejecting its argument that the plaintiff's claims were not cognizable under § 1983.  *Id.* at 598.  The trial court later granted summary judgment for the plaintiff class.  *Id.*  The Public Defender Commission appealed the trial court's decision, arguing, among other things, that the trial court was required to dismiss the § 1983 suit pursuant to *Heck*. *Id.*

After analyzing *Heck*, the concurring opinions in *Heck* and *Spencer*, and the decisions of other circuits, the *Powers* court held that the plaintiff's claims were cognizable and not barred by the *Heck* favorable-termination requirement because habeas relief was unavailable as a matter of law due to the plaintiff's short prison sentence.  *Id.* at 603. Thus, in the Sixth Circuit, the favorable-termination requirement "cannot be imposed against § 1983 plaintiffs who lack a habeas option for the vindication of their federal rights."  *Id.*  The purpose underlying this holding, and the other decisions finding an exception to the *Heck* favorable-termination

requirement, is "to allow the plaintiff access to federal or state court to make his or her § 1983 suit." *Harrison v. Michigan*, 722 F.3d 768 (6th Cir. 2013).

Despite the fact that Sumpter's complaint explained in great detail that the *Heck* favorable-termination requirement does not apply in his case because his sentence was completed before the Michigan Supreme Court ruled on his appeal, Defendants ignored the issue and simply asserted that Sumpter's case should be dismissed because he had not obtained a reversal of his underlying conviction. (Compl. ¶¶ 12-15). The Court rejects Defendants' argument which clearly should have addressed the issue raised by Sumpter.

Sumpter was unable to obtain habeas review as a matter of law. According to the habeas statute:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Adequate relief was available from the Michigan state courts so Sumpter was unable to make a valid habeas petition until he exhausted state remedies. *Id.* The Michigan Supreme Court, however, did not issue its decision not to take Sumpter's appeal until over 15 months after he was released from prison and three months after he completed his term of parole. (Compl. ¶ 12-13). Once released from custody, the writ of habeas corpus was no longer available. 28 U.S.C. § 2254(b)(1). Sumpter was therefore unable to obtain federal habeas review of his imprisonment as a matter of law. Accordingly, the *Heck* favorable-determination requirement does not bar his instant § 1983 action. *Powers*, 501 F.3d at 603.

### 2. Defendant Hammoud is Entitled to Dismissal Based on Absolute Prosecutorial Immunity

It is well settled that that "a prosecutor is absolutely immune from civil liability in connection with the action he takes in furtherance of the duties of his office as a prosecutor." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). *See also, Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13 (1976) ("An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity ."). Since absolute immunity protects the holder from suit and not merely liability, it should be decided as early as possible. *See Criss v. City of Kent*, 867 F.2d 259, 261 (6th Cir. 1988). Hammoud argues that he is entitled to dismissal of Sumpter's complaint based on absolute immunity because the actions about which Sumpter complains were in furtherance of his duties as a prosecutor. After carefully and liberally considering Sumpter's complaint and exhibits attached thereto, this Court agrees.

As with his claim against Judge Atkins, Sumpter's claims against Defendants Hammoud and Cox are premised on his assertion that the underlying criminal complaint was defective due to the missing complaining witness signature, and that that defect deprived the state trial court of all jurisdiction to proceed against him in the criminal case. Indeed, Sumpter presents the same argument both when describing his claims generally, and when describing his particular claims against each of the Defendants. For instance, Sumpter generally claims that the "complaint papers [with the missing signature] verify plaintiff was subjected to a malicious prosecution." (Compl. ¶ 17). While Sumpter alleges that Ms. Stanley's deposition transcript "clearly reveals that [Defendants] collectively and maliciously fabricated evidence," he ties that allegation not to her substantive testimony (which did implicate Sumpter in the fraudulent transaction), but rather to the fact that "neither defendant personally attested to the truth of any said evidence in support

9

of a complaint (charging document) naming plaintiff." (*Id.* ¶18).[4] Similarly, when discussing his specific claims against Defendant Cox, Sumpter focuses on "the fact [that Cox] caused plaintiff to be unconstitutionally seized and subjected to prosecution and **without presenting a judge or magistrate with a complaint and or supporting affidavit, upon oath or affirmation**..." (*Id.* ¶36) (emphasis added).[5] The same is true with respect to Sumpter's specific allegations against Defendant Hammoud:

> Abed Hammoud ... clearly instituted and or caused to be instituted against plaintiff, criminal charges, [knowing] that the statutory offenses listed on the complaint papers were clearly not supported by any probable cause...Hammoud, **from what plainly appears on the complaint papers**, with reckless and callous indifference to plaintiff's federal rights, **applied his signature of sworn authorization, and at a time when no evidence of criminal activity in the form of oath, affirmation or sworn affidavit attached was apparent or had been established on the complaint**.

---

[4] Other paragraphs in Sumpter's complaint make equally clear that his claims rest on his allegation that the criminal complaint on which he was prosecuted and convicted was defective because it lacked the complaining witness signature, *see e.g.*, Compl., ¶¶ 10, 22-26, 36, 48, 54-56, and because of other actions which took place after the complaint's execution, *i.e.*, the prosecution itself. *Id., e.g.*, ¶ 57 (alleging that Defendant Hammoud "maintained a prosecution against plaintiff based solely on a theory of conspiracy...").

[5] Sumpter does allege that "Cox knowingly provided false information that mortgage lenders or any other party named on the subject complaint had been victimized witness [sic]," that he "fabricated evidence prior to any complaint naming plaintiff being executed and or filed," and that Cox's "testimony clearly reaffirms that he did not act with the scope of his official duties..." (*Id.* ¶¶ 37-39). While the Court must liberally construe Sumpter's complaint, this does not include straining to identify a claim that he has expressly indicated he is not making. As discussed herein, the context of Sumpter's complaint makes clear that his claims against Cox relate to the fact that the criminal complaint in question did not bear Cox's signature. Sumpter makes no allegation that Ms. Stanley actually gave false testimony during the investigative subpoena process, and as shown in the transcript which Sumpter himself attached to his complaint (and which the Court may consider here), it was Ms. Stanley, not Cox, who testified at that proceeding. *Cf.* Compl., ¶ 38. And it was she, not Cox, who clearly implicated Sumpter in the scheme in which she was the victim. (Compl. Ex. B at 27-34). The Court also notes that contrary to Sumpter's contention, he would not have had a right to confront Ms. Stanley during her investigative subpoena testimony. However, he did have a right to confront her, and his attorney apparently did confront her, at the preliminary examination proceedings. (Compl., Ex. B).

10

(Compl. ¶¶43-44) (emphasis added). Finally, Sumpter emphasizes that his "claims as to the acts of defendant Hammoud does not bring into question the knowing use of false testimony and or the suppression of material evidence during criminal trial proceedings, nor the defendant's appearance at a probable cause hearing… [but rather] Hammoud's decision to prosecute plaintiff …**[where] no complaint was previously established upon any oath…**" (*Id.* ¶¶47-48) (emphasis added).[6]

Sumpter's brief in opposition to Defendants' motion makes equally clear that his challenge is to the fact that the criminal case against him proceeded on a criminal complaint that was missing the complaining witness' signature, which he claims not only deprived the State of jurisdiction to arrest and prosecute him, but also deprives the Defendants of any immunity.[7] In his "Concise Statement of Issues Presented" Sumpter states that he has "successfully stated a claim of malicious prosecution and conspiracy… by providing evidence … that his stated arrest, subsequent prosecution and sentence to imprisonment did not derive from a criminal complaint requesting a warrant as singed upon oath or affirmation by a complaining witness to extend

---

[6] Sumpter's "Conspiracy to Prosecute" claim rests on the same allegation that the criminal complaint was not properly signed and that as a result, his entire criminal prosecution was constitutionally defective. *See e.g.*, Compl. ¶¶ 55-56 (alleging that "complaint papers failed to demonstrate defendant Cox presented any complaint requesting a warrant…" and Hammoud "provided a sworn authorization upon the complaint document, absent any probable cause, upon oath or affirmation**…**").

[7] He also argues that the conspiracy case should not have proceeded against him because of a lack of evidence as Judge Coleman seemed to find at the preliminary examination of Nelson Sumpter. While the reasons why Sumpter went to trial on the conspiracy charge are not entirely clear on the present record, what is clear is that Cox would have had nothing to do with the pursuit of those charges post-preliminary exam, and Hammoud's pursuit of those charges would have been purely a prosecutorial act for which he would be entitled to absolute immunity. *Imbler*, 424 U.S. at 430-31

11

jurisdiction for issuance of an arrest warrant." [26 at 12].[8] Elsewhere in his brief he similarly states, "when reduced to its essence, Plaintiff's § 1983 claim [is that] the State failed to make a case against Plaintiff …based on a criminal complaint upon Oath or affirmation…" [*Id.* at 16]. He also states that he "was arrested, prosecuted and sentence[d] to imprisonment [] 'where at the bottom of the criminal complaint requesting the warrant, the line for complaining witness was blank'. As a result, there is no proof…as required to extend jurisdiction to any judge for the issuance of a warrant for Plaintiff's arrest and prosecution…Unless defendants can provide some documented proof that the criminal case against the Plaintiff, Omar Sumpter was in fact initiate[d] and maintained [based on a properly signed complaint], no immunity as based upon state or federal law is warranted…the record is devoid of documented evidence that any court involved in the prosecution of Omar Sumpter acquired jurisdiction [to prosecute him…]" [*Id.* at 14-17 (emphasis added); *see also e.g., id.* at 19 ("Plaintiff has clearly stated a claim …because … a criminal complaint as signed upon oath or affirmation by a complaining witness or complainant is require to extend jurisdiction [to proceed in a criminal case"); 24 ("the pertinent question hear [sic] must be, when considering the absence of Allen Cox's signature as a complaining witness providing his oath…")[9]

---

[8] His only other substantive "issue presented" similarly references that "at the bottom of the criminal complaint at issue the line for complaining witness is blank." [*Id.* at 13].

[9] Sumpter even goes so far as to suggest that the merits of the Defendants' instant motion rests on the outcome of his objections to this Court's Report and Recommendation to dismiss his claims against Judge Atkins on the grounds that she was entitled to absolute judicial immunity and possessed jurisdiction to proceed in the criminal case against Sumpter. [26 at 15]. However, that issue has now been resolved against him in light of Judge Borman's multiple rulings on the matter. Judge Borman's Opinion and Order adopting this Court's recommendation explained that "While Plaintiff denies that the criminal complaint was adequately supported and sworn, this factual dispute does not diminish Judge Atkin's subject matter jurisdiction to entertain the criminal complaint and issue a warrant for Plaintiff's arrest." [29 at 6]. And, in rejecting Sumpter's motion for reconsideration, Judge Borman cited multiple cases holding that the trial

Accordingly, the Court finds that, even liberally construing Plaintiff's *pro se* complaint, his challenge is to the manner in which the criminal complaint was executed and acted upon. There can be no doubt that insofar as Defendant Hammoud's conduct is implicated in that challenge, it was in his role as a prosecutor. *See Imbler*, 424 U.S. at 430-31 (holding that a prosecutor is absolutely immune from suit under § 1983 for conduct in "initiating a prosecution and in presenting the State's case," as long as that conduct is "intimately associated with the judicial phase of the criminal process."). *See also, Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012) ("A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity.") (citing *Imbler*, 424 U.S. at 430–31 and *Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997)). Accordingly, he is entitled to absolute immunity from Sumpter's § 1983 suit.

### 3. Defendant Cox is Entitled to Dismissal Based on Qualified Immunity

Defendant Cox argues that he is entitled to qualified immunity which, like absolute immunity, is an entitlement not to stand trial or face the burdens of litigation rather than just immunity from liability. *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985). When evaluating a claim of qualified immunity, two inquiries must be made: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, show a violation of a constitutional right and (2) whether the right was clearly established in the context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If either inquiry is determined in the negative, then qualified immunity bars the suit. Usually, a court should begin its analysis with the first inquiry and only proceed to the second if it finds there was a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see*

---

court does not lose jurisdiction over a criminal defendant simply because the complaint on which he is charged is in some way defective. [31 at 4-5].

*also Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 568 (6th Cir. 2013). Following that protocol here makes clear that Cox is entitled to qualified immunity.

As shown above, Sumpter's claim is that his constitutional rights were violated when the State subjected him to criminal prosecution without any jurisdiction to do so because the underlying criminal complaint lacked a complaining witness signature. *Supra* at 9-12. However this very argument has been rejected by this Court. As noted in Judge Borman's Opinion denying Sumpter's motion for reconsideration, "Plaintiff provides no basis for his claim that the absence of a complaining witnesses's signature renders the complaint defective where the complaint contains the express attestation of the state court district judge that the facts set forth in the complaint where subscribed and sworn before her." [31]. Further, even assuming *arguendo* that this established a defect in the complaint, this did not divest the state court of jurisdiction to proceed against Sumpter in the criminal case. [*Id.* at 4-5 (citing *People v. Payne*, No. 219727, 2000 WL 33400212, at *3 (Mich. Ct. App. Nov. 28, 2000))]. Accordingly, no constitutional violation was committed by prosecuting Sumpter based on the criminal complaint in question, and Defendant Cox is entitled to qualified immunity.[10]

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that Defendants Allen Cox and Abed Hammoud's Motion to Dismiss [23] be GRANTED and that Plaintiff's complaint be DISMISSED.

Dated: December 6, 2013                                             s/David R. Grand
Ann Arbor, Michigan                                               DAVID R. GRAND
                                                                          United States Magistrate Judge

---

[10] Moreover, Defendant Cox conducted the investigation, not the alleged wrongful prosecution, and thus he could not have caused the alleged constitutional violation.

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                                  s/Felicia M. Moses
                                                  FELICIA M. MOSES
                                                  Case Manager

Dated: December 6, 2013